***********
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner, with modifications, and enters the following Opinion and Award. *Page 2 
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as:
 STIPULATIONS
The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
1. Stipulated Exhibit One (1) — Plaintiff's medical records and medical bills;
2. Stipulated Exhibit Two (2) — North Carolina Industrial Commission forms and filings;
3. State's Exhibit One (1) — Defendants' payroll records from June 2007 through October 2007.
 *********** ORDER
During the penalty hearing before the Deputy Commissioner, One on One Tree Expert, Wayne Allen, Individually, and/or Wayne Allen d/b/a One on One Tree Expert (hereinafter, Defendant or Defendant Allen) produced to the North Carolina Industrial Commission Fraud Unit "cardboard cards" depicting Defendants' payroll records from June 2007 through October 2007. The Deputy Commissioner admitted these "cardboard cards" into evidence without objection as State's Exhibit One (1). Counsel for Plaintiff made a request on the record to obtain copies of State's Exhibit One (1), and counsel for the North Carolina Industrial Commission, who moved State's Exhibit One (1) into evidence, indicated that she would provide him with copies. However, it does not appear that counsel for Plaintiff ever received a copy of State's Exhibit One (1), since the transcript of the hearing does not include it and counsel for Plaintiff *Page 3 
renewed his request to obtain copies of this exhibit prior to the Full Commission review and also requested in his brief to the Full Commission that these documents be included in the record. After a diligent search, the North Carolina Industrial Commission has been unable as of this time to locate State's Exhibit One (1), or to obtain a copy from either of the parties. Since the majority of the payroll records that would be covered by State's Exhibit One (1) would show payroll records for time periods after the date of Plaintiff's injury, the Full Commission has sufficient evidence to determine the issues raised in I.C. 790119. These records would be more germane to the penalty phase of the proceeding under N.C. Gen. Stat. § 97-94(b), which can be severed.
It is therefore ordered that PH-1901 is hereby severed from I.C. 790119. The penalty hearing in PH-1901 under N.C. Gen. Stat. § 97-94(b) is remanded to the Deputy Commissioner level for further consideration.
 *********** ISSUES
The issues to be determined are:
1. Whether Defendants are subject to the North Carolina Workers' Compensation Act?
2. Whether Plaintiff's right knee and right leg conditions are the result of a compensable injury by accident, and if so, to what compensation, if any, is he entitled?
 ***********
Based upon the competent and credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following: *Page 4 
 FINDINGS OF FACT
1. Plaintiff is a resident of Salisbury, North Carolina, and is 31 years old, with a date of birth of September 2, 1977. Plaintiff completed the 9th grade, but recently obtained his general equivalency diploma (GED). Plaintiff began working for Defendant on a periodic basis in 1996. When Plaintiff worked for Defendant, it would be on a continuous, full-time basis for at least 40 hours per week, and at other times, he would work elsewhere. Plaintiff's job duties with Defendant included tree removal, trimming, and debris cleanup.
2. On June 14, 2007, Plaintiff was working for Defendant in a crew consisting of 4 people, which included Plaintiff, Defendant Wayne Monroe Allen, Mr. Jimmy Shane Turner, and Bobby, Defendant Allen's son. The last name of Bobby is unknown, but the record indicates that his last name may not have been "Allen." For approximately 8 to 12 months prior to June 14, 2007, 3 individuals, not including Defendant Allen, worked for Defendant "usually all the time, and then sometimes he [Defendant Allen] would help us . . .," according to Plaintiff. Further, Plaintiff recalled that from the time he began working for Defendant in 1996 through 2007, "most of the time it was always three" people with whom he worked.
3. The individuals with whom Plaintiff worked in the months preceding June 14, 2007 included Mr. Ronnie Nichols; however, Mr. Turner did not work for Defendant at the same time that Mr. Nichols worked for Defendant. In addition to Mr. Nichols and Mr. Turner, Plaintiff also recalled working with Bobby. Occasionally, Defendant Allen's wife, Mrs. Dorothy Allen, would drive a truck to a job or chip some brush, but she only worked once in a while. The three individuals that Plaintiff recalled as working on a crew during this time period "usually all the time," other than Defendant Allen, were: either Mr. Nichols or Mr. Turner, Bobby, and Plaintiff. Defendant Allen would advise all of these crew members when and where to begin and *Page 5 
end the work day, provide them tools and equipment with which to work, pay them by the hour, and would otherwise supervise and control their work. The Full Commission finds as fact that Plaintiff's testimony concerning the number of and the names of the crew members with whom he worked while employed by Defendant is credible.
4. Both Defendant Allen and Mrs. Allen admitted that Bobby worked with Defendant. Mrs. Allen testified that although Bobby did "go out, and he was a climber" with Defendant Allen, she and her husband home-schooled him, so he was not "out there every single day." Defendant Allen testified that Bobby was not an employee, but he admitted that he did issue Bobby paychecks.
5. The Full Commission finds, based upon the greater weight of the evidence, that on June 14, 2007, as well as the months preceding this date, Defendant employed 3 or more employees on a consistent, daily basis, including Plaintiff, Bobby, and either Mr. Turner or Mr. Nichols. The Full Commission further finds as fact that on June 14, 2007, Plaintiff, Bobby, and Mr. Turner were employees and not subcontractors of Defendant Allen.
6. Prior to June 14, 2007, Plaintiff had been working for Defendant full-time for almost a year earning $12.00 per hour. On average, Plaintiff worked 40 hours per week. Plaintiff received paychecks usually signed by Mrs. Allen, but occasionally signed by Defendant Allen. Defendant never withheld taxes from Plaintiff's paychecks. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff's average weekly wage at all times relevant to these proceedings was $480.00, yielding a compensation rate of $320.00.
7. On June 14, 2007, Plaintiff, Defendant Allen, Mr. Turner, and Bobby were working at a house upon which a tree fell. One of the crew members placed an aluminum extension ladder up against the side of the house, and Plaintiff, Defendant Allen, and Bobby *Page 6 
climbed up the ladder in order to get onto the roof. Plaintiff then decided to go back down the ladder in order to help Mr. Turner, who was trying to hold a rope and a saw on the deck. As soon as Plaintiff stepped onto the ladder, it slipped, causing his foot to get trapped through a rung on the ladder. Plaintiff then fell with the ladder off of the house and heard a loud pop in his right knee. Plaintiff experienced immediate swelling and pain in his right knee. Defendant Allen witnessed Plaintiff fall from the house while trapped on the ladder and laughed because the fall caused the ladder to bend. Later the same day, Plaintiff presented to the emergency department at Rowan Regional Medical Center, where he received diagnoses of a hairline fracture to his right tibia and a right knee contusion.
8. From June 14, 2007 through August 10, 2007, Plaintiff remained non-weight bearing on his right leg, and was unable to work due to his work injury. Defendant provided Plaintiff with some odd jobs during this time period, which he could do despite his right leg injury, such as repairing a lawnmower and a fence. Plaintiff earned a total of $1,000.00 for these odd jobs, and did not work anywhere else during this time period. The Full Commission finds as fact that these odd jobs did not establish that Plaintiff had wage earning capacity.
9. Approximately 3 weeks after Plaintiff's June 14, 2007 work injury, he saw Dr. Robert Samuel Humble, an orthopaedist. Dr. Humble concluded that Plaintiff needed an anterior cruciate ligament (ACL) reconstruction, which he performed on August 10, 2007. Dr. Humble kept Plaintiff out of work until October 2007.
10. Plaintiff began a new job for the Town of Spencer, North Carolina on October 23, 2007 that was in compliance with the restrictions from Dr. Humble. Plaintiff's job involved running a "chip truck" that picks up yard debris. At the time of the hearing before the Deputy Commissioner, Plaintiff still had lifting and climbing restrictions. The Town of Spencer has *Page 7 
been accommodating these restrictions. Plaintiff's earnings with the Town of Spencer are $9.75 per hour for a 40-hour week, yielding an average weekly wage of $390.00.
11. The fall from the ladder as described by Plaintiff on June 14, 2007 caused all of the right lower extremity conditions for which he received treatment, including the hairline fracture to his right tibia and a right knee contusion. The surgery Dr. Humble performed on August 10, 2007 to repair a medial meniscus tear and the ACL tear was reasonably necessary in order to effect a cure, to give relief, and/or to lessen Plaintiff's period of disability from the June 14, 2007 work injury. There is a possibility that Plaintiff will need an arthroscopic debridement at some point in the distant future, but it would be unlikely within the next 2 years. As of Plaintiff's last visit with Dr. Humble on December 20, 2007, his restrictions included "no picking up trash." Plaintiff was unable to keep follow-up appointments on February 13, 2008 and February 25, 2008. Dr. Humble has not found Plaintiff to be at maximum medical improvement or given him a permanent partial disability rating.
12. Defendant Allen had no workers' compensation insurance *Page 8 
coverage on June 14, 2007, although he does own several vehicles, homes, and boats. Mrs. Allen would typically write the paychecks to the employees who worked for Defendant Allen, and would pay the bills of the business out of the same checkbook. The checkbook was a family checkbook used to pay the business expenses and the household expenses, such that the funds were co-mingled between the business and the household.
13. Defendant One on One Tree Expert had liability insurance through Insurance Services Associates of Salisbury, but as of the date of the hearing before the Deputy Commissioner, had no workers' compensation insurance coverage. Mrs. Allen testified that she never knew Defendant One on One Tree Expert to have workers' compensation insurance coverage, and furthermore, she never knew that there was a requirement to have it. However, her husband, Defendant Allen, dealt directly with the insurance agent.
14. Mrs. Allen did the reconciliation of the checkbook and kept track of how much money was in the bank.
15. After Plaintiff's injury, he continued to call Defendant Allen in order to request assistance with his medical bills, but after a while, Defendant Allen and Mrs. Allen stopped returning his telephone calls.
16. Plaintiff incurred numerous medical bills in the treatment of his right knee injuries, including, but not limited to, bills from Rowan Regional Medical Center, Dr. Humble, and various other healthcare providers.
17. Mrs. Dorothy Allen does not appear to be an individual who had the ability to bring Defendant into compliance with the statutory provisions requiring workers' compensation insurance coverage. Defendant Wayne Allen dealt directly with the insurance agents for his business interests and purchased the insurance without any assistance from or input by Mrs. Allen. Therefore Defendant Wayne Allen had the ability to bring Defendant into compliance.
18. Mrs. Allen testified, and the Full Commission finds as a fact, that Plaintiff no longer has a job with Defendant because of his efforts to assert a workers' compensation claim.
19. Defendant has paid no indemnity compensation or medical bills for Plaintiff since his June 14, 2007 work injury.
20. Although Defendant Allen asserted that the men working for him were sub-contractors, the greater weight of the evidence does not support his contention. Furthermore, the Full Commission does not find his testimony on this issue to be credible.
 *********** *Page 9 
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Defendant Allen had 3 employees at the time of Plaintiff's June 14, 2007 work injury and therefore was subject to and bound by the North Carolina Workers' Compensation Act. Defendant Allen had an obligation to provide workers' compensation insurance coverage for his employees. N.C. Gen. Stat. §§ 97-2, 97-3, and 97-9.
2. On June 14, 2007, Plaintiff was an employee of Defendant One on One Tree Expert, Wayne Allen, Individually, and/or Wayne Allen d/b/a One on One Tree Expert and Defendant Allen did not have workers' compensation insurance coverage for its employees on the date of Plaintiff's work injury.
3. Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course and scope of his employment with Defendant Allen on June 14, 2007. N.C. Gen. Stat. § 97-2(6). Defendant Allen is liable for the indemnity and medical compensation owed to Plaintiff under the North Carolina Workers' Compensation Act as a result of his June 14, 2007 work injury. N.C. Gen. Stat. §§ 97-2, 97-19. Plaintiff is entitled to temporary total disability compensation from June 14, 2007 through October 22, 2007 at the rate of $320.00 per week. N.C. Gen. Stat. § 97-29.
4. Plaintiff suffered a loss of wage earning capacity, in that he returned to work with permanent restrictions for a lower average weekly wage and is entitled to temporary partial disability compensation. N.C. Gen. Stat. § 97-30. *Page 10 
5. Defendant Allen is responsible for paying all medical bills which are causally related to Plaintiff's June 14, 2007 work injury, including, the bills from Rowan Regional Medical Center, Dr. Humble, and other healthcare providers. N.C. Gen. Stat. § 97-25.
6. Plaintiff's counsel is entitled to a reasonable attorney's fee, pursuant to N.C. Gen. Stat. § 97-90. N.C. Gen. Stat. § 97-90.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Subject to the attorney's fee set forth below, Defendant Allen shall pay to Plaintiff temporary total disability compensation for the period from June 14, 2007 through October 22, 2007 at the rate of $320.00 per week. Defendant Allen shall pay temporary partial disability compensation according to the provisions of N.C. Gen. Stat. § 97-30. Based upon 2/3 of his pre-injury average weekly wage of $480.00 and his post-injury average weekly wage of $390.00, Plaintiff is entitled to temporary partial disability compensation of $60.00 per week until further Order of the North Carolina Industrial Commission.
2. Defendant Allen shall pay all medical bills incurred or to be incurred related to Plaintiff's June 14, 2007 work injury, including all bills pertaining to Plaintiff's right leg injuries from Rowan Regional Medical Center, Dr. Robert Samuel Humble, and various other healthcare providers.
3. All indemnity payments awarded herein are subject to a reasonable attorney's fee of 25 percent which shall be deducted from the compensation due Plaintiff and shall be paid by Defendant Allen directly to Plaintiff's counsel. *Page 11 
4. Pursuant to N.C. Gen. Stat. § 97-94(d), an additional penalty of 100 percent of the amount of the compensation due to Plaintiff in this matter is assessed against Defendant Wayne Allen, individually and d/b/a One On One Tree Expert, for failing to comply with N.C. Gen. Stat. § 97-93. Defendant shall contact Assistant Attorney General Tracy C. Curtner at the office of the North Carolina Industrial Commission Fraud Section to determine the current amount due.
5. As this case has been remanded for further proceedings to determine N.C. Gen. Stat. § 97-94(b) penalties, no penalties under that section are addressed herein. As ordered above, Case Number PH-901 is severed from this proceeding and is remanded to the Deputy Commissioner section to address the missing evidence and its effect on the penalty under N.C. Gen. Stat. § 97-94(b).
6. Defendant shall pay the costs of these proceedings.
This the 24th day of April 2009.
S/___________________
BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/___________________
DANNY LEE McDONALD COMMISSIONER
S/___________________ DIANNE C. SELLERS COMMISSIONER